IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

E. MICHAEL ROBIE,

           Plaintiff,

v.                                          CIVIL ACTION NO. 2:17-cv-03089

THOMAS E. PRICE, et al.,

           Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction [ECF No. 3]. For the reasons stated herein, the Motion [ECF No. 3] is **GRANTED in part** as to the Temporary Restraining Order and **RESERVED in part** as to the Preliminary Injunction.

I. BACKGROUND

The plaintiff, E. Michael Robie, D.O., a family practice physician, provides services to medically underserved communities in Putnam and western Kanawha counties. V. Compl. ¶42 [ECF No. 1]. Dr. Robie treats 121 homebound patients who would otherwise go without medical care due to their fragile conditions. *Id.* at ¶¶ 12, 42. He is the sole attending physician for two assisted living facilities. *Id.* at ¶ 43. Dr. Robie currently serves as the peer-elected Secretary/Treasurer at Charleston Area

Medical Center, Inc. ("CAMC"), and his peers at CAMC recently elected him to serve as Chief of Staff at CAMC in 2019. *Id.* at ¶ 45; Resp. by Pl. 8 [ECF No. 19].

On December 1, 2016, the Centers for Medicare & Medicaid Services ("CMS") sent a letter to Dr. Robie requesting medical documentation for eleven of his patients. V. Compl. Ex. 2A, at 2 ("Dec. 1 Letter") [ECF No. 1-5]. The Dec. 1 Letter requested the following: admission history results, test requisitions, discharge summaries, patient information sheets, physician's orders, consultation reports, verbal orders, laboratory tests, requests for services, prescriptions, progress notes, and home assessments. *Id.* Elizabeth Montgomery, the Department Manager for Primary Care at CAMC who regularly handles document requests from CMS for CAMC's physicians, forwarded CMS's request to Ciox Health, who maintains CAMC's archived patient records. V. Compl. Ex. 2, at ¶ 7 ("Mont. Aff.") [ECF No. 1-4]. Ms. Montgomery confirmed with Ciox Health that they provided the requested records to CMS on or before December 10, 2016 ("Dec. Production"), well within CMS's December 15, 2016, deadline. Mont. Aff. ¶ 8; Dec. 1 Letter.

CMS did not contact CAMC or Dr. Robie until it sent an e-mail on April 4, 2017, to CAMC asking for an example of Dr. Robie's signature. Mont. Aff. ¶ 9. Examples of Dr. Robie's signature were provided to CMS on April 5, 2017. Mont. Aff. ¶ 10.

Then, CMS sent a letter by its contractor, Palmetto GBA, LLC, dated May 9, 2017, to Dr. Robie stating that Dr. Robie's Medicare billing privileges were being

2

revoked effective June 8, 2017. V. Compl. Ex. 1A ("May 9 Letter") [ECF No. 1-2]. The reason given for revocation was a "Failure to Provide CMS Access to Documentation" under 42 C.F.R. § 424.535(a)(10). May 9 Letter. CMS stated that it was missing documents for six of the beneficiaries listed in the Dec. 1 Letter and received insufficient documents for the other five beneficiaries listed. May 9 Letter. CMS attached a table specifying the particular beneficiaries, particular dates of service, and particular kinds of services that CMS claimed were missing from the Dec. Production. May 9 Letter.

On May 26, 2017, Dr. Robie stated under oath that he submitted the missing documentation to CMS and Palmetto GBA ("May Production"). V. Compl. ¶ 11; V. Compl. Ex. 1, at ¶ 7 ("First Robie Aff.") [ECF No. 1-1]. While the parties agree that Dr. Robie produced documents in the May Production, they dispute whether the May Production sufficiently complied with the May 9 Letter. On May 31, 2017, Dr. Robie sued CMS and Palmetto GBA to halt the revocation of his Medicare billing privileges effective June 8, 2017.

On June 6, 2017, the parties entered into an agreement to delay Dr. Robie's revocation date until July 10, 2017, and the defendants agreed to review the additional documents provided in Dr. Robie's May Production. Tr. of Mots. Hr'g 6:15–8:6, June 9, 2017 [ECF No. 9]. In a June 14, 2017 letter, CMS through Palmetto GBA reaffirmed its revocation of Dr. Robie's Medicare billing. Resp. by Pl. Ex. 8 ("June 14 Letter") [ECF No. 19-8]. Notably, the reconsideration determination was made by the

3

same Palmetto GBA analyst who made the original determination. May 9 Letter; June 14 Letter. The June 14 Letter contains no details regarding which documents CMS and Palmetto GBA consider to still be missing.

The parties dispute whether the Secretary of the United States Department of Health and Human Services ("Secretary") is in receipt of the medical documents requested in the Dec. 1 Letter. This dispute appears to be depriving medically underserved West Virginians of their access to necessary health services.

## II. LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Nat'l Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008)). The plaintiff must satisfy all four elements. *Id.* The elements for a temporary restraining order are the same as those for a preliminary injunction.

## III. DISCUSSION

The ultimate issue before the court is whether I should grant Dr. Robie a temporary restraining order staying the revocation of his Medicare billing privileges. However, before turning to the temporary restraining order, I must first determine whether the court has jurisdiction over this case.

A.  Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 405(g) and *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Federal courts are barred from reviewing claims under the Social Security Act, including the revocation of a physician's Medicare billing privileges, unless there has been a final decision by the Secretary. 42 U.S.C. § 405(g); 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii; *Shalala v. Ill. Council on Long Term Health Care, Inc.*, 529 U.S. 1, 10–11 (2000). A decision is final if the claimant has presented his claim to the agency and has exhausted his administrative remedies. *Mathews*, 424 U.S. at 328. Presentment is always required, but the Secretary may waive exhaustion. *Id.* If the Secretary does not waive exhaustion, the court may imply waiver "if the plaintiff asserts a 'colorable' constitutional claim that is 'collateral' to the merits." *Varandani v. Bowen*, 824 F.2d 307, 310 (4th Cir. 1987) (citing *Mathews*, 424 U.S. at 330–31). "The rationale for the implied waiver rule, at least as to procedural due process claims, is that a 'preliminary' administrative decision to deprive an individual of property may cause irreparable harm that cannot be rectified by a postdeprivation hearing, *and thus that the 'preliminary' decision is in fact 'final.'* Id.* (emphasis added) (citing *Mathews*, 424 U.S. at 331–32).

Presentment requires an "initial presentation of the matter to the agency." *Ill. Council*, 529 U.S. at 20. "Presentment can be fulfilled by contesting tentative agency determinations." *Cassim v. Bowen*, 824 F.2d 791, 794 (9th Cir. 1987). The May 9

5

Letter declared that Dr. Robie's Medicare billing privileges were being revoked on June 8, 2017. It was not a request for information or other form of communication. Absent any action on Dr. Robie's part, his Medicare billing privileges would have been revoked effective June 8, 2017. Accordingly, the May 9 Letter constitutes an agency determination. Dr. Robie's May Production contested CMS's determination by requesting that the revocation be rescinded upon the production of the requested documents. *See* Tr. of Mots. Hr'g 18:15–19:8, June 26, 2017 [ECF No. 25]. Therefore, the court **FINDS** that presentment has been satisfied in this case.

Since Dr. Robie only just invoked the administrative process on June 18, 2017, by requesting a formal reconsideration, he has not exhausted his administrative remedies. Resp. by Pl. Ex. 6 [ECF No. 19-6]. Additionally, the Secretary has not waived the exhaustion requirement in this case. Tr. of Mots. Hr'g 24:11–13, June 26, 2017. Therefore, the court must consider whether it may imply waiver of the exhaustion requirement. The court may imply waiver if the plaintiff (1) presents a constitutional claim entirely collateral to the substantive claim of entitlement and (2) shows that full relief cannot be obtained at a postdeprivation hearing. *Mathews*, 424 U.S. at 330–31; *see Varandani*, 824 F.2d at 310; *Ram v. Heckler*, 792 F.2d 444, 446 (4th Cir. 1986).

Dr. Robie is not challenging the merits of the Secretary's revocation. Rather, he is challenging the process by which the Secretary revoked his Medicare billing privileges. V. Compl. ¶¶ 51-53. Thus, I **FIND** that Dr. Robie's procedural due process

claim is a constitutional claim that is entirely collateral to the substantive merits underlying the agency determination. *See Mathews*, 424 U.S. at 330–31 (finding claim to predeprivation hearing prior to termination of Social Security benefits is a constitutional due process claim entirely collateral to the underlying agency determination); *Ram*, 792 F.2d at 446 (finding a "final decision on Ram's substantive claim would not answer the constitutional challenge to the validity of a suspension prior to a hearing").

Dr. Robie has also made a showing that full relief cannot be obtained at a postdeprivation hearing. In *Ram v. Heckler*, the Fourth Circuit found that losing a year of income during the administrative review process was sufficient to show that full relief was not obtainable at a postdeprivation hearing for jurisdictional purposes. *See Ram*, 792 F.2d at 446. In this case, more is at stake than Dr. Robie's income—his career will be altered in an irreparable way. In addition to the fact that 70% of Dr. Robie's practice is government insured patients, Dr. Robie currently serves as the Secretary/Treasurer at CAMC. First Robie Aff. ¶¶ 4, 15. He has been elected by his peers to serve as Chief of Staff-elect in 2018 and Chief of Staff in 2019. *Id.* at ¶ 4. Dr. Robie also serves on several CAMC committees including the Medical Staff Quality Improvement Council and the Medical Staff Bylaws Committee. *Id.* at ¶ 12. Revocation of his Medicare billing privileges will strip Dr. Robie of his peer-elected administrative positions at CAMC since he will no longer be eligible to serve on CAMC's staff. *Id.* at ¶ 18. Restoration to these positions is not possible post

revocation. Therefore, I **FIND** that a postdeprivation hearing cannot provide Dr. Robie full relief and that I may imply waiver of the exhaustion requirement.

Because Dr. Robie has demonstrated presentment and waiver, the court **FINDS** that it has jurisdiction pursuant to 42 U.S.C. § 405(g) and *Mathews*. The court must now address the merits for issuing a temporary restraining order.

B.   *Real Truth* Elements for Temporary Restraining Order

    i.   Likelihood of Success on the Merits

Dr. Robie claims he has not received adequate due process prior to being deprived of his property interest in continuing to have Medicare billing privileges. V. Compl. ¶ 51. The Fourth Circuit has recognized that a physician's "expectation of continued participation in the [M]edicare program is a property interest protected by the due process clause of the [F]ifth [A]mendment." *Ram*, 792 F.2d at 447. To evaluate the likelihood of success on the merits, the court must consider whether Dr. Robie is entitled to additional pre-revocation process. *See Arriva Med.*, 2017 WL 943904, at *10 ("To prevail, [the plaintiff] bears the burden of showing a substantial likelihood that the Due Process Clause entitles it to additional pre-deprivation process.").

As a general matter, courts are lenient on what they require of the Secretary to satisfy due process when revoking a physician's Medicare and Medicaid billing privileges. *See Varandani*, 824 F.2d at 310–11 (finding that a chance to respond in writing and face-to-face meeting with a peer review group recommending suspension while having an attorney present was sufficient due process); *Ram*, 792 F.2d at 447

8

(finding that a full criminal trial on Medicare fraud was sufficient due process); *Ritter v. Cohen*, 797 F.2d 119, 123 (3rd Cir. 1986) (finding that an opportunity to meet with a peer review team prior to receiving a sanction and having a chance to submit written reasons against termination decision was sufficient due process); *Arriva Med. LLC v. U.S. Dep't of Health and Hum. Servs.* 2017 WL 943904, at *17 (D.D.C. Mar. 9, 2017) (finding that a paper hearing and later oral presentation of health care provider's arguments was sufficient due process). The courts are in agreement that due process does not entitle a physician to a full evidentiary hearing prior to having his Medicare billing privileges revoked. *See, e.g.*, *Varandani*, 824 F.2d at 311. However, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Supreme Court in *Mathews* articulated a three factor balancing test for determining whether sufficient process has been given prior to the deprivation of a property interest. *Mathews*, 424 U.S. at 335. The court must balance:

> [1]the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

### 1. Private Interest

Since the intended beneficiaries of the Medicare program are the Medicare

beneficiaries, not the physicians who provide services through Medicare, the private interest a physician has in continuing to bill to Medicare is often discounted by the courts. *See Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 364–65 (6th Cir. 2000) (examining circuit court law determining that "the private interest at stake is not particularly strong because the Medicare provider is not the intended beneficiary of the Medicare program"). Despite this, there are considerable private interests at stake in this case. Dr. Robie cannot maintain his position on CAMC's staff if his Medicare billing privileges are revoked. First Robie Aff. ¶ 17. If he cannot remain on CAMC's staff, Dr. Robie will lose his peer-elected positions at CAMC. *Id.* at ¶ 18.

When a physician is faced with having his Medicare or Medicaid billing privileges revoked, the courts often place the burden on the physician to dramatically restructure his practice by either providing health services without any assurance of payment or taking on only private patients during the administrative appeals process. *See, e.g., Ritter*, 797 F.2d at 123. I am not convinced that this adequately appreciates the severity of disruption that the revocation of Medicare billing privileges does to a practice that takes years to build. Given that 70% of Dr. Robie's patients are governmentally insured, revocation of Dr. Robie's Medicare billing privileges will gut his practice. First Robie Aff. ¶ 15. This is in addition to losing all his service positions in the local medical community and receiving permanent reputational harm. *Id.* at ¶¶ 12, 13, 14, 18, 19, 21. Therefore, I **FIND** that the private

interest factor weighs in favor of Dr. Robie.

## 2. Risk of Erroneous Deprivation

While some courts have noted that that the adequacy of a physician's records is not usually at high risk for erroneous decision making by the Secretary, this case presents two concerns. *See Ritter*, 797 F.2d at 123.

First, Dr. Robie has received no meaningful communication regarding the reason for his revocation. In *Arriva Med., LLC v. U.S. Dep't of Health and Hum. Servs.*, the district court determined that the plaintiff had received due process where the plaintiff received a three-page exposition cataloguing the plaintiff's arguments against revocation and explaining why the revocation. *See Arriva Med.*, 2017 WL 943904, at *13. The Secretary has not presented a similar explanation in this case. In the May Production, Dr. Robie produced nearly 1500 pages of medical records in response to CMS's May 9 Letter. Resp. by Pl 6. Dr. Robie stated under oath that those are the documents requested by the Secretary in the May 9 Letter. Second Mot. by Pl. for Leave to Supp. Resp. Ex. A ("Third Robie Aff.") [ECF No. 26-1]. The Secretary claims that the May Production did not satisfy any part of the deficiency stated in the May 9 Letter. Tr. of Mots. Hr'g 37:8–21, June 26, 2017. However, CMS never communicated this to Dr. Robie. This omission causes me to question the accuracy of the Secretary's determinations and the sufficiency of notice from CMS to Dr. Robie.

Second, Dr. Robie has not received any in person meeting with a party responsible for the determinations made regarding his billing privileges. While due

process does not require that a physician be given a full evidentiary hearing prior to revocation, courts commonly find sufficient due process where the physician received some in person opportunity to state their position. *See, e.g., Varandani*, 824 F.2d at 310–11 (finding due process where physician had face-to-face meeting with peer review group recommending suspension); *Ram*, 792 F.2d at 447 (finding due process where physician had full criminal trial); *Ritter*, 797 F.2d at 123 (finding due process where physician met with peer review team prior to sanction); *Thorbus v. Bowen*, 848 F.2d 901, 902 (8th Cir. 1988) (finding due process where physician presented oral argument through counsel to Office of Inspector General of the Department of Human Health and Service); *Arriva Med.*, 2017 WL 943904, at *14 (finding due process where plaintiff received in-person meeting with senior CMS officials, including the head of PEOG prior to revocation). Some minimal opportunity to meet in person with an individual involved in the revocation determination is a valuable procedural safeguard—a valuable procedural safeguard that was not afforded Dr. Robie.

In this case, Dr. Robie has not been given any explanation or opportunity to be heard beyond a most conclusory statement that he failed to provide requested documents. I find that this heavy handed and superficial bureaucratic pronouncement creates a substantial risk of erroneous deprivation. Therefore, I **FIND** that this factor weighs in favor of Dr. Robie.

### 3. *Government Interest*

Here, since no wrongdoing is alleged against Dr. Robie, the government's

12

interest is limited to "preserving scarce financial and administrative resources" and "ensuring that its money is not spent on medically unnecessary services." *Ritter*, 797 F.2d at 123. Indeed, avoiding waste seems to have been Congress's motivation for authorizing the Secretary to make Medicare billing revocations under 42 C.F.R. § 424.535(a)(10) for inadequate documentation for home health services. *See* 42 U.S.C. § 1395u(h)(9). Any revocation of Medicare billing privileges under 42 C.F.R. § 424.535(a)(10) will implicate the government's interest in ensuring that Medicare funds are not spent on medically unnecessary services. That concern is not unique to this case. Therefore, I **FIND** that this factor weighs only slightly in favor of the Secretary.

Balancing these three factors, I **FIND** that Dr. Robie is likely to succeed on the merits of his due process claim that he is entitled to additional procedural safeguards prior to the revocation of his Medicare billing privileges. Safeguards sufficient to constitute due process require the Secretary to provide an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552). Meaningful process has not been accorded to Dr. Robie at this point in this case.

### ii. Likelihood That Dr. Robie Will Suffer Irreparable Harm

Dr. Robie has demonstrated that he will suffer substantial financial and reputational harm to his career if his Medicare billing privileges are revoked. *See Ram*, 792 F.2d at 446 (finding losing up to one year of income during the appeals

13

process due to erroneous administrative decision would constitute harm that could not be recompensed); *but see Arriva Med.*, 2017 WL 943904, at *8 ("[T]he sole fact that a company is losing money does not irreparable harm make."). First, Dr. Robie will lose a substantial number of patients. Currently, 70% of his patients are governmentally insured. First Robie Aff. ¶ 15. If Dr. Robie's Medicare billing privileges are revoked, he will not be able to prescribe medications for and treat his Medicare patients. Resp. by Pl. Ex. 4, at ¶¶ 3, 4, 6 ("Second Robie Aff.") [ECF No. 19-4]. Dr. Robie has also been notified by several non-Medicare insurance companies that they will terminate their contracts with Dr. Robie upon his revocation. *Id.* at ¶ 13. During Dr. Robie's period of revocation, his patients will be required to find alternative medical providers for their medical needs. Indeed, home health agencies have already begun contacting Dr. Robie's patients informing them that they need to find a new physician. Second Robie Aff. ¶ 5. There is no guarantee that they will come back to Dr. Robie even if his billing privileges are reinstated. Dr. Robie's practice likely will not be made whole through retroactive payments. This is not only significant financial harm, it also is essentially a gutting of Dr. Robie's entire practice.

Additionally, Dr. Robie will lose his staff appointment at CAMC, and with that, he will lose his peer-elected positions as Secretary/Treasurer (current) and Chief-of-Staff (2019). First Robie Aff. ¶¶ 17, 18; Second Robie Aff. ¶ 12. Dr. Robie will also have to report this revocation when he reapplies for appointment and clinical privileges at any health care facility, and accordingly, it will create a permanent black

mark on his reputation. Second Robie Aff. ¶ 11. This is substantial damage to Dr. Robie's reputation, both the reputation that comes with being Chief-of-Staff and his reputation more generally as a physician, which cannot be undone through retroactive payments.

Therefore, I **FIND** it likely that Dr. Robie will suffer irreparable harm in absence of temporary injunctive relief.

### iii. Balance of Equities

The Supreme Court in *Winter* uses the phrase "balance of equities" interchangeably with the phrase "balance of hardships." *Winter*, 555 U.S. at 26–27. In applying this factor, the Court looked at "the most serious possible injury" to the parties. *Id.* Considering the most serious possible injury to Dr. Robie in this case, it is apparent that his career as a whole is in jeopardy, and his ability to practice his chosen profession is under substantial threat. He faces substantial and irreparable disruptions to his practice, achievements, and reputation that he has spent over a decade building. Considering the most serious possible injury to the Secretary, it seems that the Secretary is faced with the financial burden of providing a modicum of additional procedure before revoking Dr. Robie's Medicare billing privileges. The most serious injury is much greater for Dr. Robie than for the Secretary. Therefore, I **FIND** that the balance of equities favors Dr. Robie.

### iv. Temporary Restraining Order in the Public Interest

Dr. Robie is the sole attending physician for two assisted living facilities. First Robie Aff. ¶ 11. He treats 121 homebound patients who are otherwise unable to travel for medical care due to their fragile conditions, and he provides medical services to some of the most vulnerable citizens in West Virginia in Putnam and western Kanawha counties. *Id.* at ¶ 11. Dr. Robie attests that he is one of only two family practice physicians who provide home visits to these homebound patients. Second Robie Aff. ¶ 15. He also stated under oath that the other family practice physician who provides these home visits is losing her Medicare billing privileges, leaving a vulnerable population of West Virginians without access to medical care. *Id.* at ¶ 15. It is clear to me that removing Dr. Robie from the medical community will hinder the ability of West Virginians to receive necessary health care. Therefore, I **FIND** that temporary preliminary relief is clearly and very substantially in the public interest.

I **FIND** that Dr. Robie has shown that he is likely to succeed on the merits of his procedural due process claim, that he is likely to suffer irreparable harm in the absence of temporary preliminary relief, that the balance of equities tips in his favor, and that temporary preliminary relief is in the public interest. Therefore, I **FIND** that Dr. Robie is entitled to temporary preliminary relief.

### III. CONCLUSION

For the reasons given above, the court **GRANTS in part** the plaintiff's Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction [ECF No. 3].

The defendants are **ENJOINED** from revoking Dr. Robie's Medicare billing privileges for 14 days from the issuance of this order. The defendants are **ORDERED** to immediately update their PECOS billing system to ensure Dr. Robie's billing privileges are not revoked prior to the expiration of this temporary restraining order. This Order will be enforced upon request by further court action.

To the extent that the plaintiff's Motion seeks relief *ex parte*, it is **DENIED as moot** since the defendants have received notice, have had an opportunity to brief on this motion, and have been present at two hearings regarding this matter.

**IT IS FURTHER ORDERED** that the parties appear for a Preliminary Injunction hearing on **Monday, July 17, 2017, at 10:00 a.m**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 7, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE