IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

E. MICHAEL ROBIE,

                Plaintiff,

v.                                                                    CIVIL ACTION NO.   2:17-cv-03089

THOMAS E. PRICE, et al.,

                Defendants.


## MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction [ECF No. 3]. On July 7, 2017, I granted the temporary restraining order and reserved ruling on the preliminary injunction. I will now address the plaintiff's request for preliminary injunction. For the reasons stated herein, the Motion for Preliminary Injunction [ECF No. 3] is **GRANTED in part** and **DENIED in part.**

## I.   BACKGROUND

The plaintiff, E. Michael Robie, D.O., a family practice physician, provides services to medically underserved communities in Putnam and western Kanawha counties. V. Compl. ¶42 [ECF No. 1]. Dr. Robie treats 121 homebound patients who would otherwise go without medical care due to their fragile conditions. *Id.* at ¶¶ 12, 42. He is the sole attending physician for two assisted living facilities. *Id.* at ¶ 43.

Dr. Robie currently serves as the peer-elected Secretary/Treasurer at Charleston Area Medical Center, Inc. ("CAMC"), and his peers at CAMC recently elected him to serve as Chief of Staff at CAMC in 2019. *Id.* at ¶ 45; Resp. by Pl. 8 [ECF No. 19].

On December 1, 2016, the Centers for Medicare & Medicaid Services ("CMS") sent a letter to Dr. Robie requesting medical documentation for eleven of Medicare beneficiaries who received medical services from Dr. Robie. V. Compl. Ex. 2A, at 2 ("Dec. 1 Letter") [ECF No. 1-5]. At the evidentiary hearing on July 17, 2017, Dr. Robie testified that he did not see the Dec. 1 Letter in December. Tr. of Mots. Hr'g 63:9–11, July 17, 2017 [ECF No. 42]. The Dec. 1 Letter requested the following: admission history results, test requisitions, discharge summaries, patient information sheets, physician's orders, consultation reports, verbal orders, laboratory tests, requests for services, prescriptions, progress notes, and home assessments. *Id.* Elizabeth Montgomery, the Department Manager for Primary Care at CAMC who regularly handles document requests from CMS for CAMC's physicians, forwarded CMS's request to Ciox Health, who maintains CAMC's archived patient records. V. Compl. Ex. 2, at ¶ 7 ("Mont. Aff.") [ECF No. 1-4]. Ms. Montgomery confirmed with Ciox Health that they provided the requested records to CMS on or before December 10, 2016 ("Dec. Production"), well within CMS's December 15, 2016, deadline. Mont. Aff. ¶ 8; Dec. 1 Letter.

CMS did not contact CAMC or Dr. Robie until it sent an e-mail on April 4, 2017, to CAMC asking for an example of Dr. Robie's signature. Mont. Aff. ¶ 9.

2

Examples of Dr. Robie's signature were provided to CMS on April 5, 2017. Mont. Aff. ¶ 10.

About one month later, CMS sent a letter by its contractor, Palmetto GBA, LLC, dated May 9, 2017, to Dr. Robie stating that Dr. Robie's Medicare billing privileges were being revoked effective June 8, 2017. V. Compl. Ex. 1A ("May 9 Letter") [ECF No. 1-2]. The May 9 Letter explained that Dr. Robie's privileges would be revoked for a "Failure to Provide CMS Access to Documentation" under 42 C.F.R. § 424.535(a)(10) in response to the Dec. 1 Letter. May 9 Letter. CMS stated that it was missing documents for six of the beneficiaries listed in the Dec. 1 Letter and received insufficient documents for the other five beneficiaries listed. May 9 Letter. CMS attached a table specifying the particular beneficiaries, particular dates of service, and particular kinds of services that CMS claimed were missing from the Dec. Production. May 9 Letter. For one of the eleven beneficiaries, the May 9 Letter claimed that documents from January 2013 were missing; however, the Dec. 1 Letter only requested documents from service year 2012. Tr. of Mots. Hr'g 18:12–19:4, 70:24–71:4, July 17, 2017.

On May 26, 2017, Dr. Robie stated under oath that he submitted the missing documentation to CMS and Palmetto GBA ("May Production"). V. Compl. ¶ 11; V. Compl. Ex. 1, at ¶ 7 ("First Robie Aff.") [ECF No. 1-1]. Furthermore, at the evidentiary hearing, Dr. Robie testified that he went through the documents for each beneficiary to make sure that there was a plan of care, face-to-face documentation, and home

health certifications so that the May Production satisfied the Secretary's request. Tr. of Mots. Hr'g 68:25–69:25, July 17, 2017. While the parties agree that Dr. Robie produced documents in the May Production, they dispute whether the May Production sufficiently complied with the May 9 Letter. On May 31, 2017, Dr. Robie sued CMS and Palmetto GBA to halt the revocation of his Medicare billing privileges effective June 8, 2017.

On June 6, 2017, the parties entered into an agreement to delay Dr. Robie's revocation date until July 10, 2017, and the defendants agreed to review the additional documents provided in Dr. Robie's May Production. Tr. of Mots. Hr'g 6:15–8:6, June 9, 2017 [ECF No. 9]. In a June 14, 2017 letter, CMS through Palmetto GBA reaffirmed its revocation of Dr. Robie's Medicare billing for "Failure to Provide CMS Access to Documentation" under 42 C.F.R. § 424.535(a)(10) in response to the Dec. 1 Letter. Resp. Ex. 8 ("June 14 Letter") [ECF No. 19-8]. The reconsideration determination was made by the same Palmetto GBA analyst who made the original determination. May 9 Letter; June 14 Letter. The June 14 Letter does not identify the documents that CMS and Palmetto GBA consider to still be missing. The Secretary presented no evidence at the evidentiary hearing that the May Production was considered before the June 14 Letter was decided. In fact, counsel for the government made contradicting statements as to whether these additional documents in the May Production were considered by the Secretary of the United States Department of Health and Human Services ("Secretary") before the June 14

4

Letter, upholding Dr. Robie's revocation, was decided. Tr. of Mots. Hr'g 84:12–86:17,

July 17, 2017.[1]

The parties dispute whether the Secretary is in receipt of the medical

documents requested in the Dec. 1 Letter. This dispute appears to be depriving

medically underserved West Virginians of their access to necessary health services.

---

[1]

MR WESTFALL: "It's our position he didn't respond appropriately with requests – to the requests on December 1. He had time to – in order to fulfill that and he didn't before the revocation letter on May the 9th. The problem – or not the problem, but the situation is from that point forward he had – he was given – he did have opportunities. He did present additional records and he's done that through the reconsideration process. *It's our position, because he didn't send them on December 1 or prior to May 9th, we had the – the Secretary had the discretion, through its contractor under the reg, to revoke his privileges and they were revoked.*
THE COURT: *For the original default?*
MR. WESTFALL: *Yes.*
THE COURT: But, in other words, you're telling me that the cabinet officer in charge of this, through his representative, allowed time for another set of documents to be sent, extended the time within which he might send records and not be revoked, but didn't consider them, but *revoked him based on the first defalcation?*
MR. WESTFALL: *No,* I think that – I don't think that's correct. *The records that were sent subsequently were considered and reviewed,* which further indicated that Dr. Robie failed to meet his requirement when the first request went through. At that point, then the administrative process – and it's our position is that if he wants – if he's looking to try to have that revocation rescinded, then it's going to have to go through the administrative process.
THE COURT: Let me be sure I understand you again. Are you telling me that the – before the revocation took place, that the records that were sent later and handed to the U.S. Attorney's Office, delivered by receipt to the contractor and the Secretary and so forth, were or were not considered in the decision to revoke?
MR. WESTFALL: My understanding was that they were examined and –
THE COURT: Were they considered in the decision?
MR. WESTFALL: *They were considered and the decision was still to continue to go with the revocation because he failed to respond to the request in December* and –
THE COURT: I don't get that at all.
. . .
THE COURT: . . .*Were, to your knowledge as counsel and an officer of the Court, these documents sent the second and third time considered in making the decision to revoke?* Yes or no?
MR. WESTFALL: *Yes.*" (emphasis added).

## II.  LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Nat'l Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008)). The plaintiff has the burden of proof for all four elements. *Id.*

## III.  DISCUSSION

I must now consider whether to grant Dr. Robie a preliminary injunction staying the revocation of his Medicare billing privileges. However, before turning to the preliminary injunction, I must first determine whether the court has jurisdiction over this case.

### A. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 405(g) and *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Federal courts are barred from reviewing claims under the Social Security Act, including the revocation of a physician's Medicare billing privileges, unless there has been a final decision by the Secretary. 42 U.S.C. § 405(g); 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii; *Shalala v. Ill. Council on Long Term Health Care, Inc.*, 529 U.S. 1, 10–11 (2000). A decision is final if the claimant has presented his claim to the agency and

6

has exhausted his administrative remedies. *Mathews*, 424 U.S. at 328. Presentment is always required, but the Secretary may waive exhaustion. *Id.* If the Secretary does not waive exhaustion, the court may imply waiver "if the plaintiff asserts a 'colorable' constitutional claim that is 'collateral' to the merits." *Varandani v. Bowen*, 824 F.2d 307, 310 (4th Cir. 1987) (citing *Mathews*, 424 U.S. at 330–31). "The rationale for the implied waiver rule, at least as to procedural due process claims, is that a 'preliminary' administrative decision to deprive an individual of property may cause irreparable harm that cannot be rectified by a postdeprivation hearing, *and thus that the 'preliminary' decision is in fact 'final.'" Id.* (emphasis added) (citing *Mathews*, 424 U.S. at 331–32).

Presentment requires an "initial presentation of the matter to the agency." *Ill. Council*, 529 U.S. at 20. "Presentment can be fulfilled by contesting tentative agency determinations." *Cassim v. Bowen*, 824 F.2d 791, 794 (9th Cir. 1987). The May 9 Letter declared that Dr. Robie's Medicare billing privileges were being revoked on June 8, 2017. It was not a request for information or other form of communication. Absent any action on Dr. Robie's part, his Medicare billing privileges would have been revoked effective June 8, 2017. Accordingly, the May 9 Letter constitutes an agency determination. Dr. Robie's May Production contested CMS's determination by requesting that the revocation be rescinded upon the production of the requested documents. *See* Tr. of Mots. Hr'g 18:15–19:8, June 26, 2017 [ECF No. 25]. Therefore, the court **FINDS** that presentment has been satisfied in this case.

Since Dr. Robie only just invoked the administrative process on June 18, 2017, by requesting a formal reconsideration, he has not exhausted his administrative remedies. Resp. by Pl. Ex. 6 [ECF No. 19-6]. Additionally, the Secretary has not waived the exhaustion requirement in this case. Tr. of Mots. Hr'g 24:11–13, June 26, 2017. Therefore, the court must consider whether it may imply waiver of the exhaustion requirement. The court may imply waiver if the plaintiff (1) presents a constitutional claim entirely collateral to the substantive claim of entitlement and (2) shows that full relief cannot be obtained at a postdeprivation hearing. *Mathews*, 424 U.S. at 330–31; *see Varandani*, 824 F.2d at 310; *Ram v. Heckler*, 792 F.2d 444, 446 (4th Cir. 1986).

Dr. Robie is not challenging the merits of the Secretary's revocation. Rather, he is challenging the process by which the Secretary revoked his Medicare billing privileges. V. Compl. ¶¶ 51–53. Thus, I **FIND** that Dr. Robie's procedural due process claim is a constitutional claim that is entirely collateral to the substantive merits underlying the agency determination. *See Mathews*, 424 U.S. at 330–31 (finding claim to predeprivation hearing prior to termination of Social Security benefits is a constitutional due process claim entirely collateral to the underlying agency determination); *Ram*, 792 F.2d at 446 (finding a "final decision on Ram's substantive claim would not answer the constitutional challenge to the validity of a suspension prior to a hearing").

Dr. Robie has also made a showing that full relief cannot be obtained at a

postdeprivation hearing. In *Ram v. Heckler*, the Fourth Circuit found that losing a year of income during the administrative review process was sufficient to show that full relief was not obtainable at a postdeprivation hearing for jurisdictional purposes. *See Ram*, 792 F.2d at 446. In this case, more is at stake than Dr. Robie's income—his career will be altered in an irreparable way. In addition to the fact that 70% of Dr. Robie's practice is government insured patients, Dr. Robie currently serves as the Secretary/Treasurer at CAMC. First Robie Aff. ¶¶ 4, 15. He has been elected by his peers to serve as Chief of Staff-elect in 2018 and Chief of Staff in 2019. *Id.* at ¶ 4. Dr. Robie also serves on several CAMC committees including the Medical Staff Quality Improvement Council and the Medical Staff Bylaws Committee. *Id.* at ¶ 12. Revocation of his Medicare billing privileges will strip Dr. Robie of his peer-elected administrative positions at CAMC since he will no longer be eligible to serve on CAMC's staff. *Id.* at ¶ 18. Restoration to these positions is not possible postrevocation. Therefore, I **FIND** that a postdeprivation hearing cannot provide Dr. Robie full relief and that I may imply waiver of the exhaustion requirement.

Because Dr. Robie has demonstrated presentment and waiver, the court **FINDS** that it has jurisdiction pursuant to 42 U.S.C. § 405(g) and *Mathews*. The court must now address the merits for issuing a preliminary injunction.

### B. *Real Truth* Elements for Preliminary Injunction

#### i. Likelihood of Success on the Merits

Dr. Robie claims he has not received adequate due process prior to being

deprived of his property interest in continuing to have Medicare billing privileges. V. Compl. ¶ 51. The Fourth Circuit has recognized that a physician's "expectation of continued participation in the [M]edicare program is a property interest protected by the due process clause of the [F]ifth [A]mendment." *Ram*, 792 F.2d at 447. To evaluate the likelihood of success on the merits, the court must consider whether Dr. Robie is entitled to additional prerevocation process. *See Arriva Med.*, 2017 WL 943904, at *10 ("To prevail, [the plaintiff] bears the burden of showing a substantial likelihood that the Due Process Clause entitles it to additional predeprivation process.").

As a general matter, courts are lenient on what they require of the Secretary to satisfy due process when revoking a physician's Medicare and Medicaid billing privileges. *See Varandani*, 824 F.2d at 310–11 (finding that a chance to respond in writing and face-to-face meeting with a peer review group recommending suspension while having an attorney present was sufficient due process); *Ram*, 792 F.2d at 447 (finding that a full criminal trial on Medicare fraud was sufficient due process); *Ritter v. Cohen*, 797 F.2d 119, 123 (3rd Cir. 1986) (finding that an opportunity to meet with a peer review team prior to receiving a sanction and having a chance to submit written reasons against termination decision was sufficient due process); *Arriva Med. LLC v. U.S. Dep't of Health and Hum. Servs.* 2017 WL 943904, at *17 (D.D.C. Mar. 9, 2017) (finding that a paper hearing and later oral presentation of health care provider's arguments was sufficient due process). The courts are in agreement that due process does not entitle a physician to a full evidentiary hearing prior to having

his Medicare billing privileges revoked. *See, e.g.*, *Varandani*, 824 F.2d at 311. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Supreme Court in *Mathews* articulated a three factor balancing test for determining whether sufficient process has been given prior to the deprivation of a property interest. *Mathews*, 424 U.S. at 335. The court must balance:

> [1]the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

### 1. Private Interest

Dr. Robie has substantial interests at stake in continuing to have his Medicare billing privileges. Dr. Robie cannot maintain his position on CAMC's staff if his Medicare billing privileges are revoked. First Robie Aff. ¶ 17. If he cannot remain on CAMC's staff, Dr. Robie will lose his peer-elected positions at CAMC, including his Chief of Staff position in 2019. *Id.* at ¶ 18. Given that 70% of Dr. Robie's patients are governmentally insured, revocation of Dr. Robie's Medicare billing privileges will gut his practice. First Robie Aff. ¶ 15. He will lose several additional service positions in the local medical community, and he will be subject to permanent reputational harm. *Id.* at ¶¶ 12, 13, 14, 18, 19, 21.

11

In cases similar to Dr. Robie's, courts often place the burden on the physician to dramatically restructure his practice by either providing health services without any assurance of payment or taking on only private patients during the administrative appeals process. *See, e.g., Ritter*, 797 F.2d at 123. This is because physicians are not the intended beneficiaries of the Medicare program, and so the private interest of the physician is discounted in this *Mathews* balancing. *See Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 364–65 (6th Cir. 2000) (examining circuit court law determining that "the private interest at stake is not particularly strong because the Medicare provider is not the intended beneficiary of the Medicare program"). After appropriately considering Dr. Robie's interests, I **FIND** that the private interest factor still weighs in favor of Dr. Robie.

### 2. Risk of Erroneous Deprivation

While some courts have noted that that the adequacy of a physician's records is not usually at high risk for erroneous decision making by the Secretary, this case presents several distinguishing concerns. *See Ritter*, 797 F.2d at 123.

First, Dr. Robie has received no meaningful communication regarding the reason for his revocation. In *Arriva Med., LLC v. U.S. Dep't of Health and Hum. Servs.*, the district court determined that the plaintiff had received due process where the defendant provided a three-page exposition cataloguing the plaintiff's arguments against revocation and explaining why the revocation was being upheld. *See Arriva Med.*, 2017 WL 943904, at *13. On the contrary, here, the Secretary has not presented

a similar explanation in this case. In the May Production, Dr. Robie produced nearly 1500 pages of medical records in response to CMS's May 9 Letter. Resp. by Pl 6. In fact, not every document listed in the May 9 Letter is even properly a "deficiency" because certain records had never before been requested by the Secretary. *See* Tr. of Mots. Hr'g 18:12–19:4, 70:24–71:4, July 17, 2017. Dr. Robie stated under oath multiple times that the May Production satisfies all the requests of the Secretary in the May 9 Letter. Second Mot. by Pl. for Leave to Supp. Resp. Ex. A ("Third Robie Aff.") [ECF No. 26-1]; Tr. of Mots. Hr'g 68:25–69:25, July 17, 2017. The Secretary has not communicated to anyone how the May Production is deficient.

Due process requires that the agency identify the charges with "such descriptive explanation . . . to permit [the charged party] to identify the conduct giving rise to the [charges] and thereby to enable him to make a response." *Linton v. Frederick Cty. Bd. Of Comm'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992); *see Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005) (noting that notice of the factual basis for the administrative determination and a fair opportunity for rebuttal "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations"); *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012) (finding that since the claimant "could only *guess* (partly incorrectly) as to the reasons for the [administrative] investigation [which resulted in an administrative decision that froze the claimant's assets for four years], the risk of erroneous deprivation was high."). At this point, Dr. Robie does not know how to

13

respond to the Secretary because the Secretary has failed to communicate the specific basis for the revocation to him. Dr. Robie can only guess as to what the deficiencies are.

Additionally, after the evidentiary hearing on this matter, it is now unclear to me whether the May Production constituted a fair opportunity for rebuttal. *See Arriva Med.*, 2017 WL 943904, at *13 (finding a "paper hearing" gave the medical provider an opportunity to respond by presenting reasons, in the form of evidence and arguments, in writing to the agency challenging its decision). Before the evidentiary hearing, it was implied that the Secretary had reviewed the May Production to see if those documents satisfied the May 9 Letter before the determination in the June 14 Letter was made. Counsel for the Secretary significantly muddied the waters on this during the evidentiary hearing. *See* Tr. of Mots. Hr'g 84:12–86:17, July 17, 2017; *supra* fn. 1. Upon review of the June 14 Letter, it clearly states that the June 14 Letter was decided based on a failure to provide documents in response to the Dec. 1 Letter, *not* because the May Production was insufficient to rectify the deficiencies alleged in the May 9 Letter. June 14 Letter.

Since Dr. Robie filed this lawsuit on May 31, 2017, the Secretary has had approximately six weeks to gather evidence regarding what process it has given Dr. Robie. It should not be particularly onerous to present a modicum of evidence at an evidentiary hearing as to what specific process was granted Dr. Robie with respect to his May Production. Indeed, what process the Secretary has provided is entirely

14

within the Secretary's knowledge. Neither I, nor Dr. Robie, can know what process the Secretary has provided unless the Secretary presents evidence on the matter. The Secretary has not presented any evidence whatsoever that Dr. Robie received adequate notice of the alleged deficiencies and a fair opportunity for rebuttal, so I must deeply question the accuracy of the Secretary's determinations and the sufficiency of process accorded Dr. Robie.

Furthermore, even if the May 9 Letter constituted adequate notice and the May Production constituted a paper hearing, Dr. Robie has not received any in person meeting with a party responsible for the determinations made regarding his billing privileges. While due process does not require that a physician be given a full evidentiary hearing prior to revocation, courts commonly find sufficient due process where the physician received *some* in person opportunity to state their position. *See, e.g.*, *Varandani*, 824 F.2d at 310–11 (finding due process where physician had face-to-face meeting with peer review group recommending suspension); *Ram*, 792 F.2d at 447 (finding due process where physician had full criminal trial); *Ritter*, 797 F.2d at 123 (finding due process where physician met with peer review team prior to sanction); *Thorbus v. Bowen*, 848 F.2d 901, 902 (8th Cir. 1988) (finding due process where physician presented oral argument through counsel to Office of Inspector General of the Department of Human Health and Service); *Arriva Med.*, 2017 WL 943904, at *14 (finding due process where plaintiff received in-person meeting with senior CMS officials, including the head of PEOG prior to revocation). Some minimal

opportunity to meet in person with an individual involved in the revocation determination is a valuable procedural safeguard—one that was not afforded Dr. Robie.

For this case, the opportunity to meet in person is especially valuable because it would make clear to Dr. Robie exactly what the alleged deficiencies are. The district court in *Arriva Med., LLC v. U.S. Dep't of Health and Hum. Servs.* placed a lot of emphasis on the paper hearing in its due process analysis, but the fact remained that the medical provider had *two* opportunities to meet in person with CMS higher ups, and during those meetings both CMS and the provider were able to air their arguments and grievances. *Arriva Med.*, 2017 WL 943904, at *14. On the contrary, in this case, Dr. Robie has not had an opportunity to air his grievances and argue for his position. Indeed, given the paltry communications from the Secretary, he does not even know what his grievances are.

Dr. Robie has not been given any explanation for the revocation or any opportunity to be heard beyond a most conclusory statement that he failed to provide requested documents. In the Dec. 1 Letter, he was told to comply with the law. In the May 9 Letter, he was told he did not comply with the law, and so his Medicare billing privileges were being revoked. That is it. I find that this heavy handed and superficial bureaucratic pronouncement creates a substantial risk of erroneous deprivation. Therefore, I **FIND** that this factor weighs heavily in favor of Dr. Robie.

16

*3. Government Interest*

Here, since no wrongdoing is alleged against Dr. Robie, the government's interest is limited to "preserving scarce financial and administrative resources" and "ensuring that its money is not spent on medically unnecessary services." *Ritter*, 797 F.2d at 123. Indeed, avoiding waste seems to have been Congress's motivation for authorizing the Secretary to make Medicare billing revocations under 42 C.F.R. § 424.535(a)(10) for inadequate documentation for home health services. *See* 42 U.S.C. § 1395u(h)(9). Any revocation of Medicare billing privileges under 42 C.F.R. § 424.535(a)(10) will implicate the government's interest in ensuring that Medicare funds are not spent on medically unnecessary services. That concern is not unique to this case. Therefore, I **FIND** that this factor weighs only slightly in favor of the Secretary.

Balancing these three factors, I **FIND** that Dr. Robie is likely to succeed on the merits of his due process claim that he is entitled to additional procedural safeguards prior to the revocation of his Medicare billing privileges. While the private interest and governmental interest factors weigh against one another in this balancing test, the risk of erroneous deprivation weighs heavily in favor of Dr. Robie. Here, meaningful process has likely not been accorded to Dr. Robie at this point in this case. The Secretary has provided no evidence that Dr. Robie has been specifically informed of the deficiencies against him and has been provided an opportunity to be heard "at a meaningful time and in a meaningful manner," so I must conclude that due process

is completely lacking in this case. *Mathews*, 424 U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552).

Having determined that Dr. Robie has shown that he is likely to succeed on the merits of his due process claim, I now turn to the remaining three *Real Truth* elements for a preliminary injunction.

<u>ii. Likelihood That Dr. Robie Will Suffer Irreparable Harm</u>

Dr. Robie has demonstrated that he will suffer substantial financial and reputational harm to his career if his Medicare billing privileges are revoked. *See Ram*, 792 F.2d at 446 (finding losing up to one year of income during the appeals process due to erroneous administrative decision would constitute harm that could not be recompensed); *but see Arriva Med.*, 2017 WL 943904, at *8 ("[T]he sole fact that a company is losing money does not irreparable harm make."). First, Dr. Robie will lose a substantial number of patients. Currently, 70% of his patients are governmentally insured. First Robie Aff. ¶ 15. If Dr. Robie's Medicare billing privileges are revoked, he will not be able to prescribe medications for and treat his Medicare patients. Resp. by Pl. Ex. 4, at ¶¶ 3, 4, 6 ("Second Robie Aff.") [ECF No. 19-4]. Dr. Robie has also been notified by several non-Medicare insurance companies that they will terminate their contracts with Dr. Robie upon his revocation. *Id.* at ¶ 13. During Dr. Robie's period of revocation, his patients will be required to find alternative medical providers for their medical needs. Indeed, home health agencies have already begun contacting Dr. Robie's patients informing them that they need to

find a new physician. Second Robie Aff. ¶ 5. There is no guarantee that they will come back to Dr. Robie even if his billing privileges are reinstated. Dr. Robie's practice likely will not be made whole through retroactive payments. This is not only significant financial harm, it also is essentially a gutting of Dr. Robie's entire practice.

Additionally, Dr. Robie will lose his staff appointment at CAMC, and with that, he will lose his peer-elected positions as Secretary/Treasurer (current) and Chief of Staff (2019). First Robie Aff. ¶¶ 17, 18; Second Robie Aff. ¶ 12. Dr. Robie will also have to report this revocation when he reapplies for appointment and clinical privileges at any health care facility, and accordingly, it will create a permanent black mark on his reputation. Second Robie Aff. ¶ 11. This is substantial damage to Dr. Robie's reputation, both the reputation that comes with being Chief of Staff and his reputation more generally as a physician, which cannot be undone through retroactive payments.

Therefore, I **FIND** it likely that Dr. Robie will suffer irreparable harm in absence of temporary injunctive relief.

### iii. Balance of Equities

The Supreme Court in *Winter* uses the phrase "balance of equities" interchangeably with the phrase "balance of hardships." *Winter*, 555 U.S. at 26–27; *see also League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (using "balance of hardships") (citing *Winter*, 555 U.S. at 20). In applying this factor, the Supreme Court looked at "the most serious possible injury"

to the parties. *Winter*, 555 U.S. at 26–27. Considering the most serious possible injury to Dr. Robie in this case, it is apparent that his career as a whole is in jeopardy, and his ability to practice his chosen profession is under substantial threat. He faces substantial and irreparable disruptions to his practice, achievements, and reputation that he has spent over a decade building. Considering the most serious possible injury to the Secretary, it seems that the Secretary is faced with a delay in revoking Dr. Robie's Medicare billing privileges along with the financial burden of providing a modicum of additional procedure before such revocation takes effect. The most serious injury is much greater for Dr. Robie than for the Secretary. Therefore, I **FIND** that the balance of equities favors Dr. Robie.

<u>iv. Preliminary Injunction in the Public Interest</u>

Dr. Robie is the sole attending physician for two assisted living facilities. First Robie Aff. ¶ 11. He treats 121 homebound patients who are otherwise unable to travel for medical care due to their fragile conditions, and he provides medical services to some of the most vulnerable citizens in West Virginia in Putnam and western Kanawha counties. *Id.* at ¶ 11. Dr. Robie attests that he is one of only two family practice physicians who provide home visits to these homebound patients. Second Robie Aff. ¶ 15. He also stated under oath that the other family practice physician who provides these home visits is losing her Medicare billing privileges, leaving a vulnerable population of West Virginians without access to medical care. *Id.* at ¶ 15. It is clear to me that removing Dr. Robie from the medical community will hinder the

ability of West Virginians to receive necessary health care. Therefore, I **FIND** that preliminary relief is clearly in the public interest.

I **FIND** that Dr. Robie has shown that he is likely to succeed on the merits of his procedural due process claim, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that preliminary relief is in the public interest. Therefore, I **FIND** that Dr. Robie is entitled to preliminary relief.

> ## C. Security Requirement

Finally, I must consider whether Dr. Robie is required to provide a security under Rule 65(c). Rule 65(c) of the Federal Rules of Civil Procedure states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). While a district court may waive the security requirement, it is error for a district court to entirely fail to consider whether to require a security when granting preliminary injunctive relief. *See Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013).

In determining whether the court should require a security, I look to the potential harm to the enjoined party. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 424 fn.3 (4th Cir. 1999). "[I]f there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Continental Oil Co. v. Frontier*

*Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964); *see Hoechst*, 174 F.3d at 424 fn.3 (4th Cir. 1999). "In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Hoeschst*, 174 F.3d at 424 fn. 3. The Secretary claims that it will be harmed in the amount it has to pay Dr. Robie for Medicare services actually rendered to Medicare beneficiaries by Dr. Robie after July 10, 2017. Absent some allegation of fraud or overbilling by Dr. Robie, it is unclear to me how this constitutes a harm to the Secretary. The Secretary is simply delayed in starting Dr. Robie's one year revocation from Medicare. Nothing here prevents the Secretary from imposing a full, one year revocation once the preliminary injunction is no longer in effect.

Accordingly, I **FIND** that the Secretary has not demonstrated a likelihood of harm. Therefore, I **WAIVE** the Rule 65(c) security requirement in this case.

## IV.  CONCLUSION

For the reasons given above, the court **GRANTS in part** the plaintiff's Motion for Preliminary Injunction [ECF No. 3]. The defendants are **ENJOINED** from revoking Dr. Robie's Medicare billing privileges until the Secretary presents this court with evidence that Dr. Robie has been accorded due process in the form of a meaningful opportunity to be heard consistent with this opinion or until further order of this court. The defendants are **ORDERED** to immediately update their PECOS

billing system to ensure Dr. Robie's billing privileges are not revoked prior to such evidence being presented before the court. This Order will be enforced upon request by further court action.

To the extent that the plaintiff's Motion asks for the preliminary injunction to remain in place through the *entire* administrative appeals process, it is **DENIED**. Once the Secretary demonstrates to the court that Dr. Robie has been afforded due process, Dr. Robie must challenge the Secretary's substantive decision through the administrative process.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    July 26, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

23